UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE DAVID M. ADAMS LIVING TRUST ) <br> (David M. Adams, Trustee) as nominee, ) <br> alter ego, or transferee of David M. Adams, ) <br> DAVID M. ADAMS, WELLS FARGO BANK, N.A., ) <br> as Trustee for Merrill Lynch Mortgage ) <br> Investors Trust Series MLCC 2003-B ) <br> Mortgage Pass-Through Certificates, and ) <br> TOWN OF MASHPEE MASSACHUSETTS, ) <br> ) <br> Defendants. ) | CIVIL ACTION <br> NO. 21-40111-PBS |

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO APPOINT A RECEIVER AND FOR RELATED RELIEF

June 23, 2023

DEIN, U.S.M.J.

### I.   INTRODUCTION

This matter is before the court on the emergency motion of the United States of America to appoint a receiver to, *inter alia*, manage and sell the real property located at 113 Walton Heath Way, Mashpee, Massachusetts (the "Property"), with the proceeds being applied first to the mortgage of Wells Fargo Bank, N.A.[1] and then to a federal tax lien in an amount in

---

[1] The United States and Wells Fargo have entered into a Stipulation to the effect that Wells Fargo shall be paid in full from the proceeds of the sale prior to the United States being paid. (Docket No. 65). While at the time of the Stipulation, Wells Fargo estimated that $442,349.00 was due on its mortgage, at the oral argument on the motion to appoint a receiver, held on June 20, 2023, Wells Fargo estimated that the amount due was closer to $625,000.00.

excess of $2 million for unpaid taxes owed by defendant David M. Adams. A proposed order detailing the requested relief and proposed authority of the receiver has been filed at Docket No. 58-1. Defendant David M. Adams, individually and as trustee of the David M. Adams Living Trust (collectively "Adams"), does not dispute the validity of the government's tax lien or that the amount due for the 2009 and 2011 tax years is in excess of $2 million. Opposition (Docket No. 67) at 1 n.1. Nor does he disagree that the Property needs to be sold and that the sale is not expected to satisfy the tax lien in full. See id. at 3. Similarly, Adams does not dispute that a receiver could be appointed to sell the Property due to his outstanding tax liability. See 26 U.S.C. §§ 7402(a) and 7403(d). Rather, he argues that in order to satisfy the parties' "common goal" of selling the Property for the highest possible price, he should be given "a 90-day window to market and sell the Property using a well-respected and highly experienced team of local real estate agents[.]" Opposition at 2. The government objects because Adams rented the Property and used the rental proceeds without the government's consent, made material misrepresentations to the government, including that the Property was vacant when it was in fact, rented, and failed to sell the Property on his own despite having had ample time to do so. Adams does not dispute these facts but contends that he has now retained counsel who will ensure that he takes appropriate steps to sell the Property and keep the government apprised of his efforts.

     For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Emergency Motion to Appoint a Receiver and for Related Relief"

(Docket No. 58) be ALLOWED and that the "Order Appointing Receiver" proposed by the United States (Docket No. 58-1) be entered.[2]

## II. STATEMENT OF FACTS

The following facts are not in dispute. Mr. Adams owes the United States more than $2.2 million in unpaid taxes, interest, and penalties for 2009 and 2011. In connection with a guilty plea on six criminal counts relating, *inter alia*, to tax fraud he committed as to his 2009 and 2011 tax liabilities, Mr. Adams admitted that he knowingly overestimated his tax payments on his tax returns in order to lower his tax liabilities, and that he had "willfully failed to cooperate with the IRS's efforts to collect his taxes by bouncing checks and being deceitful about payments and assets." United States v. Adams, 955 F.3d 238, 249 (2d Cir. 2020). In connection with his sentencing, the district court imposed a two-level enhancement for obstruction, which was affirmed on appeal. As the Second Circuit explained:

> Specifically, the district court determined that Adams had "willfully engaged" in a game of "cat and mouse" – "not only with the Internal Revenue Service, but also with this Court where he employed the same tactics of deceit and (obfuscation) to evade his tax liability and the criminal consequences of his convictions." The court determined that Adams used the year between his guilty plea and his sentencing to make "financial arrangements" designed to thwart the administration of justice by "concealing, transferring and failing to disclose his assets." The district court's findings amply supported the enhancement for obstruction[.]

Id. at 249-250 (internal citations omitted).

---

[2] The parties agree that the motion to appoint a receiver is a dispositive motion under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72, and that this Magistrate Judge should issue a Report & Recommendation ("R&R") subject to *de novo* review by the District Judge. See ML-CFC 2007-6 Puerto Rico Properties, LLC v. BPP Retail Properties, LLC, 951 F.3d 41, 48-49 (1st Cir. 2020). In light of the emergency nature of the motion, and the fact that there is no dispute that the Property should be sold, this R&R will be somewhat abbreviated in scope.

Unfortunately, there is evidence that Adams' deceptive conduct has continued in this action as well.  It is undisputed that the Property is an asset that can be sold to pay down some of the debt.  In several hearings before this court, both while Mr. Adams was appearing *pro se* and after he retained counsel, the government questioned what Mr. Adams was doing with the Property.  Mr. Adams told his counsel, who informed the court and the government, that the Property was not being listed for rent.  See Gov't Mem. (Docket No. 59) at 7-10 (discussing representations to the court and communications between counsel).  In reality, however, the Property was rented out for four-months beginning May 15, 2023, at the rate of $41,000 per month plus a security deposit of $20,000, and Mr. Adams has received two months' rent of $82,000 but has not paid any of that amount either to Wells Fargo or the United States.[3]

Adams has offered to keep the government apprised of his efforts to sell the Property, and to actively market it.  He has also offered to have the government speak directly to the present tenants, and to collect the rents.  The government argues that the Property should be sold this spring/summer season, and that the only way to ensure that funds are properly collected and that the marketing and sale go as smoothly as possible is to have a receiver appointed.  This court agrees.

## III.   DISCUSSION

Adams contends that he should be allowed to sell the Property because a sale through a receiver will depress the sales price.  However, he has submitted no evidence to support this argument and, as the government argues, the existence of the sizeable tax lien on the Property

---

[3] Mr. Adams contends that he has used some of this money to improve the Property in order to enhance its sale value, and has offered to make the receipts available but has not yet done so.

is notice of the need to sell the Property as soon as possible.  This court does not find the argument that the appointment of a receiver will depress the price persuasive.

The government has sought to have Ashley Brennan appointed as the receiver.  She appears to be well-qualified to sell the Property and the government has worked with her in the past.  See Declaration of Ashley Brennan (Docket No. 58-12).  Adams proposes other real estate brokers.  While they may be qualified as well, there is no basis in the record not to go forward with the government's choice.

Adams objects to Ms. Brennan because she represented a former tenant who had tried to purchase the Property, and with whom Mr. Adams ended up in litigation.  As the government argues persuasively, this fact, "[i]f anything," "bolsters her knowledge of the specific property."  Gov't Reply (Docket No. 68) at 8.  Moreover, if Mr. Adams believes that the price Ms. Brennan obtains is not adequate, he will have the opportunity to challenge it since the sales price must ultimately be approved by the court.

In short, there is nothing in the record before this court which compels the conclusion that the government should be forced to simply trust Mr. Adams to sell the Property.  He has had years to sell it but has not done so.  26 U.S.C. § 7403(d) expressly provides that "at the instance of the United States, the court may appoint a receiver to enforce the [tax] lien[.]"  The government should be permitted to proceed with the sale of the Property.

[5]

## IV.     CONCLUSION[4]

For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the "Emergency Motion to Appoint a Receiver and for Related Relief" (Docket No. 58) be ALLOWED and that the "Order Appointing Receiver" proposed by the United States (Docket No. 58-1) be entered.

    / s / Judith Gail Dein
    Judith Gail Dein
    United States Magistrate Judge

---

[4] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which the objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).